IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LEE F.,

        Plaintiff,

    v.                                     Civil Action No.
                                            3:20-CV-1272 (DEP)

KILOLO KIJAKAZI, Acting
Commissioner of the Social
Security Administration,

        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.             RAMI VANEGAS, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on March 23, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

GRANTED.

2)     The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:     March 24, 2022
           Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------x
LEE F.,

                                Plaintiff,

vs.                             3:20-CV-1272

KILOLO KIJAKAZI, ACTING COMMISSIONER
OF THE SOCIAL SECURITY ADMINISTRATION,


                                Defendant.
----------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on March 23, 2022, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | LACHMAN GORTON LAW FIRM<br>Attorneys at Law<br>P.O. Box 89<br>1500 E. Main Street<br>Endicott, New York  13761-0089<br>  BY:  PETER A. GORTON, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of General Counsel<br>J.F.K. Federal Building<br>Room 625<br>Boston, Massachusetts  02203<br>  BY:  RAMI VANEGAS, ESQ. |

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1           (The Court and all counsel present by
2               telephone.)
3           THE COURT:  All right.  Let me begin by thanking
4    both of you for excellent and spirited presentations, both in
5    written form and during this hearing.
6           The plaintiff has commenced this proceeding
7    pursuant to 42 United States Code Sections 405(g) and
8    1383(c)(3) to challenge an unfavorable determination by the
9    Acting Commissioner of Social Security in connection with his
10   application for benefits.
11          The background is as follows:  Plaintiff was born
12   in March of 1987, he is almost 35 years of age, and actually
13   now is 35, having recently had a birthday.  He stands
14   5-foot-9 or 10 inches in height and weighs 380 pounds,
15   qualifying him as obese.  Plaintiff lives in Binghamton with
16   his wife and a child, a daughter, who by my calculations is
17   approximately five years of age now.  She was one-and-a-half
18   on June 7, 2018.  The wife and daughter are both disabled.
19   Plaintiff has a high school diploma and while in school
20   attended regular classes.  Plaintiff is right-hand dominant
21   and has a driver's license and drives.  Plaintiff last worked
22   in February of 2010 but left that job due to experiencing a
23   job-related injury when he received an electrical shock from
24   some piece of equipment he was operating.  While working, he
25   was employed as a residential specialist at the ARC,

1   Association for Retarded Children.

2              Plaintiff physically suffers from obesity, mild
3   obstructive sleep apnea, gastroesophageal reflux disorder, or
4   GERD, much easier for me to pronounce, and hypertension.  He
5   underwent a craniotomy in 1997 to remove a blood clot.  There
6   was no evidence of residual difficulties associated with that
7   surgery.

8              Mentally, plaintiff suffers from conditions that
9   have been variously diagnosed as general anxiety disorder,
10  obsessive compulsive disorder, or OCD, panic disorder with
11  agoraphobia, and social anxiety.  He clearly suffers from
12  anxiety around people and low self-esteem.  He has received
13  treatment from UHS Primary Care, principally with Family
14  Nurse Practitioner Melissa Skiadas and Physician's Assistant
15  Michael Feeney.  He receives mental health treatment through
16  UHS Health/Binghamton Hospital outpatient mental health where
17  he sees Licensed Clinical Social Worker Megan Hagerbaumer
18  weekly, and has since 2016.  Periodically, he also sees
19  Dr. Sobia Mirza, a psychiatrist.

20             In terms of activities of daily living, plaintiff
21  is capable of dressing, bathing, grooming, does some cooking,
22  laundry, cleaning, he reads, plays video games, plays cards
23  with friends, socializes with friends, cares for his wife and
24  daughter.  The daughter apparently does or did need feeding
25  through a food pump every two hours.  He takes the daughter

1  to her medical appointments and he is active on social media.
2         Plaintiff has been prescribed over time various
3  medications including clonazepam, Paroxetine or Paxil,
4  Abilify, Zoloft, Celexa, Klonopin, Toprol, and omeprazole.
5  The Klonopin apparently has been helpful in calming
6  plaintiff's anxiety, according to him.  Plaintiff does not
7  consume alcohol, smoke, or use illicit drugs.
8         Procedurally, plaintiff applied for Title II and
9  Title XVI benefits in 2012, that was apparently denied.
10 Plaintiff's more recent application was made on January 13,
11 2018, alleging an onset date of February 9, 2010.  It was
12 noted that plaintiff's last date of insured status was
13 December 31, 2013.  Plaintiff in his function report claims
14 to suffer from agoraphobia, generalized anxiety disorder,
15 social anxiety, OCD, and depression.  The hearing was
16 conducted by Administrative Law Judge Shawn Bozarth on
17 November 5, 2019 to address plaintiff's claim for benefits.
18 On January 13, 2020, ALJ Bozarth issued an unfavorable
19 decision which became a final determination of the agency on
20 August 20, 2020, when the Social Security Administration
21 Appeals Council denied plaintiff's application for review.
22 This action was commenced on October 15, 2020 and is timely.
23        In his decision, ALJ Bozarth applied the familiar
24 five-step sequential test for determining disability.  He
25 first noted that plaintiff had not engaged in substantial

1  gainful activity since his alleged onset date of February 9,
2  2010.
3            He next concluded that plaintiff does suffer from
4  severe impairments that impose more than minimal limitations
5  on his ability to perform basic work functions and
6  specifically general anxiety disorder, obsessive compulsive
7  disorder, panic disorder with agoraphobia, and obesity.
8            At step three the ALJ concluded that plaintiff's
9  conditions do not meet or medically equal any of the listed
10 presumptively disabling conditions set forth in the
11 Commissioner's regulations.  He noted first that although
12 there is no listing corresponding to obesity, he has
13 considered plaintiff's obesity.  He also concluded that
14 plaintiff's conditions from a mental point of view do not
15 meet or medically equal Listings 12.04, 12.06, or 12.08.
16           The administrative law judge next concluded that
17 notwithstanding his impairments, plaintiff retains the
18 residual functional capacity, or RFC, to perform light work
19 as defined in the regulations but limited plaintiff to simple
20 routine and repetitive tasks in low-stress jobs which are
21 jobs that are defined as goal-oriented and which do not have
22 an assembly line, piecework, or numerical production quota
23 pace.  He also limited plaintiff to occasional decision
24 making, occasional changes in workplace setting, occasional
25 changes to workplace routine, occasional contact with

Case 3:20-cv-01272-DEP   Document 24   Filed 03/24/22   Page 9 of 18

17

1    supervisors, minimal contact with coworkers, and no contact
2    with customers or the public.
3             Applying that RFC at step four, the administrative
4    law judge concluded that plaintiff was not capable of
5    performing his past relevant work.
6             Proceeding to step five, the ALJ first noted that
7    if plaintiff could perform a full range of light work, a
8    finding of no disability would be directed by the
9    Medical-Vocational Guidelines, specifically Grid Rule 202.21.
10   Based on the testimony of a vocational expert, the ALJ
11   concluded that plaintiff is capable of performing work that
12   is available in the national economy, citing as
13   representative positions garment sorter, price marker, and
14   mail clerk, nonpostal, and therefore concluded that plaintiff
15   was not disabled.
16            The court's task, of course, is to determine two
17   things:  Whether correct legal principles were applied by the
18   administrative law judge, and whether substantial evidence
19   supports the resulting determination.  Substantial evidence
20   is defined as such relevant evidence as a reasonable mind
21   might accept as adequate to support a conclusion.  The Second
22   Circuit in *Brault v. Social Security Administration*
23   *Commissioner*, 683 F.3d 443 from 2012, noted that this is an
24   exceedingly deferential standard and under that standard,
25   once an ALJ finds a fact, that fact can be rejected only if a

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

1  reasonable fact finder would have to conclude otherwise.
2           The plaintiff in this case raises three
3  contentions -- really two and then the third is derivative.
4  The first claim of the plaintiff is that the ALJ erred in
5  evaluating the three available medical opinions from Dr. T.
6  Harding, the Social Security agency consultant, nonexamining;
7  Dr. Mary Ann Moore, the examining consultant; and Licensed
8  Clinical Social Worker Megan Hagerbaumer.  The primary focus
9  of the argument is on whether plaintiff could meet the
10 on-task and attendance requirements of full-time work.  The
11 second argument is addressed to the ability to work
12 occasionally with supervisors, defined as up to one-third of
13 the time, and the third challenges the step five finding
14 because the finding is based on a flawed residual functional
15 capacity finding.
16          I note as a backdrop that if there are conflicts in
17 the medical evidence on medical opinion evidence in the first
18 instance, provided of course that there is proper explanation
19 to allow for meaningful judicial review, the ultimate
20 determination of which to accept is entrusted to the
21 administrative law judge.  *Veino v. Barnhart*, 312 F.3d 578,
22 from the Second Circuit, 2002.  Because of the date of filing
23 of plaintiff's most recent application for benefits, this
24 case is governed by the new medical regulations.  Under those
25 regulations, the ALJ does not any longer defer to or give any

1    specific evidentiary weight, including controlling weight, to
2    any medical opinions or prior administrative medical
3    findings.  Instead, the ALJ is required to evaluate each of
4    those medical opinions using the relevant factors,
5    principally supportability and consistency.  The ALJ is
6    required to articulate how persuasive he or she found each
7    medical opinion and must explain how he or she considered the
8    supportability and consistency of those medical opinions.
9    The ALJ may also, but is not required to, explain how he or
10   she considered the other relevant factors set forth in the
11   regulations including the source's relationship with the
12   claimant, specialization, and other factors that tend to
13   support or contradict the medical opinion.  And of course
14   under the new regulations, the term acceptable medical source
15   is expanded.  Although there has never been a pronouncement
16   to date from the Second Circuit, I also believe that the
17   Second Circuit's opinion in *Estrella* remains vibrant, meaning
18   that if the court is convinced based on the record as a whole
19   that the regulations have been abided by, the fact that maybe
20   consistency and supportability are not incanted as specific
21   terms does not require remand.
22          In this case, there are three available medical
23   opinions.  The first comes from LCSW Hagerbaumer.  It was
24   issued on October 3, 2019, it appears at 577 to 578 of the
25   administrative transcript.  In it, Social Worker Hagerbaumer

1    rates plaintiff as extremely limited in maintaining regular
2    attendance without interruptions from psychological-based
3    symptoms, extreme being defined in the form as there is a
4    major limitation in this area.  There is no or very little
5    useful ability to function in this area.  Plaintiff is also
6    rated as markedly limited in the ability to perform
7    activities within a schedule, be punctual, perform at a
8    consistent pace, marked meaning there is substantial loss in
9    the ability to effectively function greater than 33 percent.
10   When asked about off task, the Social Worker rated plaintiff
11   as markedly limited in this area, meaning more than
12   20 percent.  And when asked about absences, she opined that
13   plaintiff would be absent three or more days per month.
14            The administrative law judge considered this
15   opinion in his decision at page 18 of the administrative
16   transcript and found it to be not persuasive, citing as
17   reasons:  One, it is not supported by the record; two, while
18   treatment records show anxiety, depression, restlessness and
19   poor eye contact, the plaintiff generally retained
20   appropriate behavior, logical thought process, fair to normal
21   attention, concentration, fair memory, average intelligence,
22   fair insight and judgment; three, denied suicidal or
23   homicidal ideations and reported that his medications worked
24   well at reducing his anxiety, panic attacks, irritability,
25   and depression; and four, he reported that he was able to

1   manage his own personal care, perform household chores, take
2   his daughter -- take care of his daughter which includes
3   keeping her on a feeding schedule and taking her to doctor's
4   appointments, and take care of his wife, prepare simple
5   meals, shop in stores and by computer and drive.
6           There is clearly some discussion that allows for
7   meaningful review.  These are check-box forms, although that
8   per se does not disqualify a medical source opinion.  It is
9   certainly a factor, however, in whether or not it is strong
10  evidence or weak evidence, particularly when there's little
11  explanation.  There is explanation on page 578, I will
12  acknowledge, but in my view the ALJ did consider the
13  supportability and consistency of this opinion sufficient to
14  allow meaningful review and I don't find any error in that
15  regard.
16          The second medical opinion in the record is from
17  Dr. Mary Ann Moore.  It is based on an examination of the
18  plaintiff on June 7, 2018, it appears at pages 450 to 454 of
19  the administrative transcript.  The plaintiff, it was noted,
20  was appearing to experience a panic attack during the
21  session.  The plaintiff was found to have intact attention
22  and concentration, intact recent and remote memory skills,
23  was found to have some limitations including significantly
24  marked limitations regarding the ability to interact
25  adequately with supervisors, coworkers, and the public and

1   sustain an ordinary routine and regular attendance at work.

2           The administrative law judge addressed the opinion
3   in page 18 of the administrative transcript, rejected the
4   marked limitation but explained the rejection, and in my
5   view, it was properly explained.  The marked limitation on
6   the ability to interact with others, one could argue, is
7   accommodated in the residual functional capacity which is
8   very limiting in terms of interacting with others and
9   certainly coworkers and the public in particular.  In my
10  view, there is a proper explanation, and as the Commissioner
11  notes and case law is clear, the administrative law judge is
12  not required to accept any particular opinion in whole.

13          The third opinion comes from Dr. T. Harding, a
14  psychologist who did not examine the plaintiff but did have
15  available to him some significant treatment records that
16  existed to date, as well as the consultative report of
17  Dr. Moore.  His opinion was given on June 13, 2018, it
18  appears at pages 55 to 64 of the administrative transcript.
19  He does find, as counsel has argued, moderate limitation,
20  ability of the plaintiff to perform within a schedule,
21  maintain regular attendance, and be punctual within customary
22  tolerances.  There is case law that suggests that a moderate
23  limitation in a mental situation is not necessarily
24  inconsistent with the performance of unskilled work.  The
25  mental RFC finding concludes that plaintiff does retain the

ability to perform unskilled work activity, avoiding working closely with others and working directly with the public. This is clearly indicative of plaintiff's ability to perform on a full-time regular basis and the limitations on interaction are in my view accommodated by the residual functional capacity finding.

I agree with the plaintiff, when plaintiff's activities of daily living are considered, that many of the activities of daily living, including denial of suicidal and homicidal ideations, are not necessarily indicative of the ability to perform full-time regular work and go out and be with the public, but as I indicated, plaintiff does take his daughter to her doctor's appointments, he does go out of the house for card games, he has gone out of the house for multiple functions, and he does go weekly to his counselor's appointment. I believe the activities of daily living are relevant and do provide some support, as the administrative law judge found, to the residual functional capacity finding. There is no doubt that plaintiff has significant psychological issues, but in my view, the residual functional capacity finding is supported. I found one entry to be -- well, two factors to be significant. One, plaintiff alleges an onset date of 2010. There are, however, no treatment records until, I believe it was November of 2015, no evidence that he received mental health treatment prior to that time.

1  One other thing I found significant was an exchange that
2  occurred on page 38 of the administrative transcript.  The
3  administrative law judge asked the question, "Well, what if a
4  job could be found that you could just have occasional
5  contact with a supervisor or coworkers and no contact with
6  the public, why couldn't you do something like that?  Answer:
7  I spend my time during the day taking care of my wife and
8  daughter."  Now he did attempt to backtrack and say that was
9  not the only reason, but clearly that is one suggested reason
10 why he's not working.
11         The bottom line is the ALJ must assess the RFC
12 based upon the entire record, not just the three medical
13 opinions, does not need to track any one medical opinion.  On
14 page 19 the administrative law judge has a paragraph that
15 summarizes the basis for his RFC finding.  I cannot find that
16 no reasonable fact finder would conclude as the ALJ did.  As
17 I mentioned before, I think the other point raised by the
18 plaintiff, working occasionally with supervisors adequately
19 addresses the concerns in that regard, even Dr. Harding only
20 suggested that the plaintiff not work closely with others.
21 The RFC is more limiting than Dr. Harding because it provides
22 that there will be no contact with the public and so there's
23 no prejudice to the plaintiff in the fact that there is a
24 more restrictive RFC finding in this regard than opined by
25 Dr. Harding.

1          I agree with the Commissioner's counsel, this is a
2     case where there is conflicting evidence, it's a case where
3     another ALJ or I could have perhaps found in the plaintiff's
4     favor and yet my task is not to determine what I would find
5     or what a reasonable fact finder would find, I have to
6     determine whether the ALJ's finding is supported by
7     substantial evidence and whether no reasonable fact finder
8     could have found or could have concluded as he did, finding
9     the facts related to plaintiff's ability to be on task and
10    meet attendance requirements of full-time work, and I'm not
11    able to make that finding.
12         So I conclude there is no error in the residual
13    functional capacity determination and therefore the step five
14    determination is not flawed.  I will therefore grant judgment
15    on the pleadings to the defendant and order dismissal of
16    plaintiff's complaint.  Thank you both, I hope you have a
17    good afternoon.
18         MR. GORTON:  Thank you, your Honor.
19         MS. VANEGAS:  Thank you, your Honor.
20              (Proceedings Adjourned 10:40 a.m.)
21
22
23
24
25

```
 1              CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4       I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5   Official Realtime Court Reporter, in and for the

 6   United States District Court for the Northern

 7   District of New York, DO HEREBY CERTIFY that

 8   pursuant to Section 753, Title 28, United States

 9   Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                 Dated this 23rd day of March, 2022.

17

18

19                        /S/ JODI L. HIBBARD
                          _____
20                        JODI L. HIBBARD, RPR, CRR, CSR
                          Official U.S. Court Reporter
21

22

23

24

25
```

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547